I'd like to reserve seven minutes for rebuttal, if I may. It has never been our suggestion that the only way to establish probable cause in a case of this nature is to have direct proof of a transmission of a specific image or direct evidence of possession in all cases. This case, however, turns on its facts. And the focus on the transmission issue and what was available to the government from the server it sees became a focus of the case because the affidavit is so devoid of other information that might have served to establish probable cause. The affidavit says this is a mixed-content site. We have no idea from the affidavit what Mr. Gourde may have looked at on the site. There is no evidence that he received or possessed pictures by any means. And as the panel noted, the affidavit failed to present other target-specific corroborating information that might have established probable cause. Now, I start with this point, Your Honor, because I think the government's casting of this argument for presentation at this point is a little bit misleading. We are not asking the Court to create a new rule. We are not asking the Court to raise the bar of probable cause for Internet computer cases. To the contrary, we are asking the Court to preserve something of the bright line that has already been established from the Court's precedent and not lower the bar. Can I ask you, are you suggesting that Weber created a bright-line rule requiring evidence of downloading before there can be probable cause to search a computer in a pornography case? Not at all, Your Honor. Okay. What is clearly the starting point of any of this analysis is a totality-of-circumstances fair reading of the affidavit. What Weber and Lacy and Hay, as a line of cases established, I believe, is that there must be probable cause to believe that the target possesses the illicit images. It's not enough to merely have access to them. It's not enough merely to have place and order for them. It's not enough to simply have an inference about what the individual may have been looking for. Could you clarify something for me on that? Yes, Your Honor. Is it the law under 25 — I think it's 2252a that counts on this, right? Is it the law under 2252a that if Gord had subscribed to the site, paid for the site, looked at 30 pictures of children on the site, but had not downloaded any to his computer, he would not be violating the law? Absolutely, Your Honor. And, in fact, the affidavit recognizes this point. If you look at paragraph 2, right at the very beginning of the affidavit. I don't care about the affidavit. What I care about is the statute in any cases construing it. Is it clear that if he subscribed to the site just so he could look at 30 pictures of children, and he did look at 30 pictures of children on the site, but knowing the law, he carefully avoided downloading any to his hard drive, would he be in compliance with the law? He would, Your Honor, because mere viewing of these illicit images would not constitute a violation of 2252 or 2252a, which are really companion statutes that penalize the possession. The statute is unequivocal, and there's not a single case that has ever suggested that going online to view contraband images alone would be a basis for prosecution. Now, of course, you're going to have to look at the pictures. That is how I read the statute. Do you happen to know, are there any cases from any circuits that say in so many words, yes, that's what it means? If they look at the pictures but they don't download them, they're legal? Your Honor, I cannot say that I know of a case where it said that mere viewing. There have been a long line of cases, particularly in the Tenth Circuit recently, including the Maxwell case, which has looked at what is sufficient to prove possession under 2252a. Every one of those cases has presumed not only that the actual possession of the image is firmly established, but there are a host of other issues. For example, anticipated in this Court's decision in Hay, it's not enough even according to the Hay decision to show that the target received the images. The government also has a burden of showing it was not unintentional or accidental. It has to be a knowing possession, an intentional possession. Of course, you don't have to establish the case in order to establish probable cause. That's absolutely correct. Sotomayor, does it make any difference now whether Weber, Lacey, and Hay are precedential because we're in bank? So why shouldn't we simply go back to square one, which is the Gates test, and ask whether, based upon what was known and what was set forth in the affidavit, there's a fair probability that images of child pornography will be found on the computer? Well, in Gates, Your Honor, the Supreme Court said that sufficient evidence must be presented to the magistrate to allow that official to determine probable cause. The determination cannot be the mere endorsement of the Supreme Court. Let me ask you a question. Are we here, as a standard of review, that we review the magistrate's finding for abuse of discretion, or is it de novo? My understanding is that it is de novo review at this point, Your Honor, that you make a fresh assessment of the sufficiency of the affidavit. And when I refer either to the previous decision or, for that matter, what I think were some very illuminating remarks and concessions by the FBI agents in the record, those, of course, are not bonding on the Court, but I think they do shed a good deal of light on what the common sense view of this affidavit is. Well, look, as a matter of common sense, he went on to the site. He – the site held itself out as having pictures of young girls engaged in sexually explicit conduct. He elected to join and pay $19.95 a month. He continued to be a member for at least two months and until the site was closed down. Why, as a matter of practical common sense, can't you infer from that that he must have or surely may have thought he was getting value received for his money? Well, Your Honor, with all due respect, the hesitation that you had in characterizing what was advertised, I think, goes to the core of what is missing in this affidavit.  is that he was getting value received for his money. I don't have much hesitation in it. I just didn't want to spend the time to read it. It did not advertise a sexually explicit material. It was highly suggestive. It was clearly prurient. It appeared to sleazy interest. And there were three images on the page itself which met the definition. Well, the problem with that, Your Honor, is that it's easy to lump this together. But there was no evidence that those pictures were even present when Mr. Gord subscribed. There's no indication. There's a fair probability of it, though, because the agent was on the site during the same period of time that Gord was. But it is also clear from the record, Your Honor, if you look at, for example, page 35 of the testimony, that all that was offered in the affidavit was a subjective impression of what these thumbnail images were. The images themselves were not attached, which is something this Court has already frowned upon in the Smith decision, 795 F. 2nd 841. It's cited in our petition reply at 16. And the agent, the affiant, conceded that he was the you were unable to view or determine what those thumbnails even looked like without enlarging them. And that appears at page 89 of the testimony. And the affidavit, it says that at page 2, you've already been subjected to the advertisement, welcome to Lolita girls, over 1,000 pictures of girls 12 to 17, naked Lolita girls with weekly updates. There are images of nude young girls, some prepubescent, appear on the page, on this page, captioned with the title, quote, Lolita, Lolita's age 12 to 17, unquote. The naked genital areas of minors are depicted in three images on this page. Now, you say there's no evidence in the record or before the magistrate that those photographs were depicted before he signed up as a member of this website? Yes, Your Honor. That's not my position. That's the position that I believe is the correct one from this Court's precedents. And obviously, you do have the right to revisit them. But I think we need to understand the context in which this is happening. In the Smith case, the Court was very clear that it did not want to leave the determination of whether something was illegal in the context of child pornography or lascivious pictures to the subjective impressions of an investigating officer. There had to be either established in the affidavit a clear basis that the undercover was qualified to make this determination. In the Smith case, it was a pediatrician. Or the pictures need to be attached for the magistrate. What we have here is merely a subjective. You're saying here that there has to be some special expertise by the investigating officer in the affiant for him to be able to identify the naked genital area of minors? The problem, Your Honor, is that we're dealing with a continuation. And anybody who subscribes to these sites has an absolute constitutional right to walk up to the line and not be subjected to a search or governmental intrusion unless it's clear that they've crossed it. Now, the affidavit itself states very clearly that this was a mixed-content site that offered child erotica, child pornography. And just a minute, counsel. You didn't get to the mixed content until you had subscribed. The advertisements on page 1 of the website and page 2 said nothing about mixed content. They said only about Lodia's age 12 to 17. It was only after you subscribed for $19.95 that you were allowed to see some photographs which were of mixed content. Isn't that the fact? That is correct, Your Honor. So to that extent, the actual content of the site does become almost irrelevant. What we have to determine is, what the Court has to determine is whether, for example, compared to something like the Froman case and the Laufer case that's cited in the government's brief at page 40, whether this admittedly suggestive advertising is sufficient to establish probable cause. Yes. There's a lot of terms been thrown around, dirty pictures, child erotica. The website, as described by Judge Beah, relative to Lolita girls, so cute preteen girls appeared, nude young girls, naked genitalia. Is that a child erotica site or is that a child pornography site? You cannot tell from that solicitation. You're admitting you can't tell. No, I'm saying you cannot tell from that solicitation. I'm asking you. I'm asking you. Well, not only do I admit it, Your Honor, and I press that point. The problem is that. Just stop a second, because that's important. Nobody's made a distinction here between child erotica and child pornography. Child erotica, it's not illegal to possess it or see it, isn't that right? That's correct, Your Honor. If this was a child erotica site as described, then as Judge Kleinfeld said, you could view it, is that correct? That's correct. And if it was a child erotica site, you could download it without violating the statute, isn't that correct? Absolutely, Your Honor. And in order for him to be charged, as he was with sexually explicit, possessing images that had sexually explicit conduct, they also have to be lascivious, isn't that right? Yes, Your Honor. And nowhere in this advertisement or what I call the offer do I see the word lascivious. However, the agent later on in the affidavit does label certain things lascivious and also labels some images that were clearly child erotica. Is that true? I mean, child pornography. I don't know that anything is purely child pornography. I think, especially based on the analysis in the Smith decision, that it may be child erotica in terms of images, it may be child pornography. The key distinction is the one between this and a case and an advertisement, a solicitation, a site that clearly has a wholly illegitimate purpose. In Laufer, the case of the Ginsburg case, the Supreme Court Ginsburg case, where the content determination between illegal child erotica and illegal porn, that if it is clearly designed solely to appeal to the prurient interests of the users, there's probable cause to believe that the materials that Gordy might have had were illegal child pornography. What were they doing on this site other than appealing to the prurient interests of the viewer? Your Honor, if we draw that inference, that the sole purpose is to appeal to the prurient interests, and merely subscribing to the site without any evidence of actually possessing any from the site is sufficient to get probable cause. Well, probable cause here was based upon the fact that he was a collector, and the experts testified about the propensities of collectors, including one of them, subscribing and collecting child erotica? Well, Your Honor, the collector profile is something that I believe adds fat and absolutely no substance to this analysis. It contains no specific information whatsoever about Mr. Gord, apart from his name, his e-mail address, which is not in any suggestive e-mail address. For example, in Hay, you had a lot of other suggestiveness in terms of the type of names that were being used, and other target-specific evidence that showed that there was more than the mere subscription to an ambiguous website. Let me back up. The flip side of this situation, if the court was to go with what seems to be an inference in terms of solicitation where it's not clear, as compared, for example, in Laufer or Froman, where the sole purpose of those sites, the explicitly advertised purpose of the site, was to distribute hardcore child pornography, that appeared in the advertisement for those websites. This is a site that has a notice of compliance with Federal law. It is commonplace, if often to state law. But the question is, if there are, what you're suggesting is that if you have a so-called mixed media site, that if the operator puts up a nice, in compliance with 18 U.S.C. such and such, and drops a few adults in, that you could never get probable cause to search, because who knows, maybe they were looking at the adult images. No, Your Honor. That's not my position. Okay. So let's take this site. You would agree that putting up a little statement that says this site is in compliance with Title 18 of the Code doesn't do much. It doesn't create any kind of an immunity, no. And it doesn't create any inference in favor of Mr. Gord, correct? It does not, Your Honor, except in contrast to the rare cases where other courts have found that the mere act of subscription or the mere act of joining, standing alone, is sufficient. That's what the government is relying on. The mere act of joining this site, because there's no other information about Mr. Gord and nothing else about his activities, that has to be the sole basis upon probable cause. The only time that any court in any circuit has found that to be sufficient is when it is explicit and unequivocal that it is offering illegal content, and in fact, the site itself is wholly illegitimate. But the law is. In fact, because I don't think it was just that he joined the site. It was if he joined the site, he didn't casually view it, he stayed on there a couple months, and it's this kind of site as advertised for girls 12 to 17, and the computer data that the agent put in said that when you view these sites, you, in fact, could both intentionally and unintentionally put information on your computer, and people like him are likely to retain information. So it's like a four-, five-, six-step process. And so I guess I'm taking issue with your statement that somehow the government would rest probable cause solely on the fact that he subscribed to a site. I mean, that's not really a fair characterization, is it? It is, Your Honor, because in fact, the affidavit says nothing about downloading or possession by any means. And if you look at paragraph 27 of the affidavit, which I think you're referring to, they're not talking about automatic downloading of any images. What they're talking about is the transmission records that are the communication records that are routinely saved on servers, which was our point that if they wanted to simply look at the server, they would have known what was downloaded. It doesn't say that. It says it can be stored on the computer, and then it talks about being stored on the browser of the computer, and that's not just a trace, but the communications. And the communications in this case, wouldn't that be the visual image? No, Your Honor. And in fact, Morigucci clarified this, if I can refer you to the record. That entire section, if you look at excerpt of record, I may have one moment to find my citation, at 99, the question was, so is it fair to say that the affidavit under whatever new theory the government proposes did not say anything about automatically, intentionally, unintentionally, or by any means that the images were transferred or downloaded to Mr. Gore's computer? Not that I can find. Counsel, as I understand it, the server shows whether an image was downloaded to the customer's computer, is that right? That's correct, Your Honor. That's what happened in Hayes. That's what happened in Lacey. As I understand it, the government had the servers from this site for some extended period of time, is that right? They had it for 4 months. And in addition to that, you know, pardon me, let's be accurate about the facts. The investigation lasted 4 months. The server was intervened by the government in the week of January 21, 2002, in the affidavit page 07. The membership lasted from November for 2 months, sometime into January. There's no evidence that the server was in possession of the government whilst Mr. Gourd could be downloading. Isn't that correct? No, Your Honor. Let me clarify the record. The server was seized in January. The warrant for Mr. Gourd. The week of January 21st. That's correct, Your Honor. The warrant for this was in Mr. Gourd's computer was in early May. There was about a 4-month period when the computer response team, which is an FBI team, actually had the server in their possession. Counsel, my question focuses on something a little different. Thank you, Your Honor. My understanding is that the server maintains a history of computers that have obtained downloads from the server. Is that correct? That's correct, Your Honor. And would you concede that if in this case, when they went through the history or if they went through the history, that the server maintains that there had been – if that history showed that Gourd had downloaded pictures of child pornography, the prohibited kind, that there would be enough probable cause combined with what else was in the affidavit to justify a search of his computer to see if the images were still on his hard drive? If that had happened, Your Honor, I could not have even filed a suppression motion in good faith, because if that transmission record had occurred, if there had been an image that was traced from the server that was unequivocally child pornography, and there was – and they had bothered with diligence, found out that it was sent, as they did in Lacey and Hayden, what would have occurred? Okay. So you are conceding that. Absolutely. So the real difference is when they look at the server, they can look at the history and see if the customer has downloaded the dirty pictures. That's correct, and that is routine. Whether they're erotica or pornography or obscenity, whatever they are, they can look at the history and see. And there's one additional point, Your Honor, because it's something the government has read. What if, for example, they had not seized the server? Well, first of all, they don't need the server, because in Lacey, they actually – they trace it from Denmark without having to search. Well, here they've got the server. They've got the server. But what if they hadn't? Look at what the collector profile lays out. It has all this boilerplate language about what people supposedly do who are collectors. No specific information about Mr. Gore. But assuming those generalities are correct, why didn't they follow up on their own information? It says, for example, that collectors correspond on e-mail and Yahoo and use chat rooms and instant messaging and store things offline with such areas of Yahoo or Hotmail that are related to their interest in pornography.   And that's what we're trying to do here. We're trying to do something about what you just raised. Do we know that they didn't? Were there any questions at the suppression hearing? Did you check the server history, and have you ascertained whether Gore did or did not download any images? Your Honor, if I could refer you to 67 as just one example from the record. Question. It's fair to say that a record of the operations of this website, the images it contained, when and if they were sent out, transmitted, e-mailed, that information could have been traced from the Iowa server. Answer, yes. This is Agent Moriguchi, the affiant. Question. That would include information that would inform the FBI about whether somebody downloaded images from the site when they downloaded them or other information indicating exactly what was sent. I don't know if you understood my question. I'm sorry. You're talking about what could be done, and I'm talking about what was done. It was not done. Is there a question and answer where he says, we didn't check? I can find that in the record. But, yes, there was an answer from Moriguchi that nothing was done to follow up with the Iowa server in terms of checking any of those transmission records. Counsel, aren't we bound by the four corners of the affidavit in our review? We are, Your Honor, to the extent, though. There's nothing in the affidavit about a server or anything that was on it or not on it. That's correct, Your Honor. Is there anything about automatic downloads or possession by any means? So how do we get into the suppression hearing and get into matters that the magistrate didn't hear about, and how do we judge what the magistrate is supposed to deduce from the affidavit on things that were done at the suppression hearing? Absolutely not. If you look at the four corners of the affidavit, although I believe paragraph 27 clearly indicates this could be done, there was no evidence of downloading or possession by any means. Moriguchi testified to that very clearly. And, in fact, he agreed on page 77 of the record. All the affidavit, in fact, establishes is that Gord logged on one time to subscribe, may very well have looked at adult pornography on the site, and never gone back. There was no evidence whatsoever that he possessed or downloaded something. What has happened is something, a policy argument or a sky is falling argument that I believe has been behind some of the government's arguments that I felt the need to address, which is that if the Court were to say this affidavit, honest facts, just looking at the four corners is insufficient, they will be unable to investigate these type of cases. The record, I think, first of all, establishes that is completely untrue. And, in fact, the affidavit shows that's untrue, because there's a whole litany of things in the collector's profile, e-mail records. These things can be routinely subpoenaed from Yahoo, the offline storage area that the collector profile says is the routine place where child pornographers store their images. They made no effort to subpoena that from Yahoo. They had Mr. Gord's e-mail address, which, by the way, was not in the least bit suggestive, something that you have only about five minutes left if you'd like to resubmit. Thank you, Your Honor. Thank you, Your Honor. Counsel, before you sit down, I'd like you to return to Judge Reimer's question, because I want to make sure we have the analytic framework correct. If we are left only with Illinois v. Gates, does your argument survive? In other words, is your argument dependent upon the Ninth Circuit authority that's developed after that or not? No. The totality of the circumstances and the common-sense approach applies in this case full force, Your Honor. The common sense has to be drawn from the facts presented in the affidavit or facts that are not presented that should have been. The government's position, if you – if it's adopted by the Court, will necessarily I believe results in a ruling that says that mere subscription to a suggestive but not necessarily wholly illegitimate website or organization is sufficient to establish probable cause. If that's the parameter, so much discretion will be vested in the investigating officers and the government in terms of what falls within those parameters that constitutionally protected material and the very sensitive privacy interests that are particularly associated with the search of the home and a personal computer are going to be left much too much to the discretion of the government. Gates talks about totality of the circumstances and common sense, but it is a guided analysis where the magistrate has to have the final say based on sufficient information presented to him or her. It can't be an endorsement of conclusions that have been made by somebody else, not by an undercover who has no qualifications presented in the affidavit to estimate the age of the individuals presented, pictured in the thumbnails, without any collector profile information that is directly related to specific facts about Mr. Gord. Remember, we need to come back to the target. All we know about Mr. Gord, apart from his mere subscription to this site, which is suggested, but I stand completely on the proposition that it's not of the explicit nature that other courts have found sufficient to be clearly wholly illegitimate at the outset. All we know about Mr. Gord is his address, his e-mail name, which is not suggested, and his credit card number. And on that basis, and the fact of subscription, on that basis, not only did the government search his home, which is the core protected area of the Fourth Amendment, but they reached into his computer, which is going to be in the future within the home, the core protected area, of our privacy interests. That's where our financial records are stored, our correspondence, all of our e-mail communications, and a host of First Amendment protected areas. If this is sufficient, if mere subscription is enough and is left to the investigating officers to make the determination that it is sufficiently suggestive or sufficiently lascivious to justify a search, I respectfully submit that there are no obvious limits anymore on the exercise of that discretion, and a lot of very critical constitutional and privacy interests may very well be implicated. Thank you, Your Honor. I don't know if that includes my rebuttal time or not. That is, it does. Then I'd like to save that last two minutes, Your Honors. Yes. Thank you. Freeman, I'm the Assistant United States Attorney assigned to this case. I was trial counsel in the district court. The heart of this case is probable cause, and I've heard some of the questions today regarding Illinois v. Gates and what that means. And in this particular case, I submit a common-sense view of the facts would lead a magistrate judge to conclude that a person who voluntarily joined a child pornography website, a website dedicated to child pornography, with the images that were seen on the first two pages, the advertisements. Help me on that. Yes. Here's my question. Let's hypothesize a site where all of the pictures are unquestionably not constitutionally protected, they're unquestionably in violation of the statute, pictures of children doing something sexual. Hypothesize that. Hypothesize that a person joins the site because he has an intense sexual desire to look at such pictures. I'd like you to further hypothesize that the person wishes to stay out of prison, and carefully reads the law, and reads the law to mean that as long as he pays his dues to the site, looks at the pictures, satisfies the sexual desire that he has, but does not download any of the pictures, he has not violated the law. In that hypothetical case, is he right? Well, I suppose it depends on what those images are. I already told you what the images were. They're images of the sort that the law would prohibit and would constitutionally prohibit. I already told you that. My question is about downloading versus looking. I understand the question, and I wanted to get to that anyway. Yes, under my view, it is. Okay. What do I look at in the statute that makes him a criminal if he does not download any pictures? Well, first of all, the statute would be specifically section 2252. It talks about receipt. It talks about possession. You mean 2252aA? Well, the particular statute here would be section 2252. But then there are subparagraphs under that statute. And the statute would be section 2252aA. I'm looking at receives, distributes, and possesses. Is there something else? No. Those are the primary ones. You can go to 2252aA2, I think. Unless I've got my number mixed up. But it doesn't matter if we're agreed on the terms, receives, distributes, possesses. Now, when you get on your computer and you look at, say, Salon or Slate or something, you know how you click on it and you read the news for that day or the New York Times site, whatever you like to look at. You read the news for that day. But if you don't download it and you just look at it, it doesn't clutter up your hard drive. Correct. I have a question on that. Isn't there a temporary Internet file created every time you go on? Yes. And doesn't that stay in your computer at least for some period of time? Yes. I'll answer both questions. You're talking about the cache there, I think. When you click on CNN.com, you've got the image in front of you. It's there. For all intents and purposes, your computer possesses it, because that data has been transmitted. But you can't retrieve it. It goes in your cache. Or if you had the capability to save certain pages from there, you could. Well, yes, if you decide to save it. But it does go into the web cache, which was discussed in the affidavit. But it didn't say that that was possession. You're stretching it. All it did is describe computer functions, cache being one place where things could be stored. You're stretching this case way beyond the affidavit, from what I can tell. There was never any argument anywhere that bringing up the image on the screen was possession. I think it's a fair inference, though. Inference or not, this was never argued before. Are you saying now that this Court should reach out and say that on this record, on this affidavit, that looking at an image on the screen is possession for violation of that statute? Well, in the district court, that was an argument that was raised. That was a position that was raised. The idea that when you possess something on your computer, you take that in conjunction with the characteristics provided in the affidavit. One can conclude when you are surfing, and an example was given in the affidavit. For instance, if a person goes to DOJ.gov, it will leave footprints. Right. But are you arguing that because it leaves footprints that that constitutes possession or the mere viewing of the image constitutes possession? I think it can be both. It can view the image. You're saying just looking on your computer is a felony. Now, hold on. Even if you don't download. But let's be clear here. By looking at it, you're possessing it. Whether you're guilty of a crime is a completely different question. Oh, no, it isn't. It is the question. Isn't the more precise question knowing possession so that. Or beyond a reasonable doubt. Well, you have to have fair probability that this you'll have evidence of this crime, correct? That is correct. And this crime includes knowing possession. So I don't see how simply viewing it would translate into knowing possession. Now, maybe there's other factors, but you're kind of changing the whole structure here by suggesting that mere viewing then becomes a fair probability of evidence of this crime. Well, let's back up. What I'm saying here is that based on the facts of this case, the subscription, the voluntary membership. The fact that he paid for it, does that make any difference here? I think that's key. I think that's key. Tell me why. Because it shows an affirmative act to make yourself available to a website, to a dedicated child pornography website, the primary feature of which, as stated in the affidavit, was the images section. The primary feature of this website was an ocean of pictures, 12 to 17-year-old naked Lolitas. And as described in the affidavit itself, there were some images that showed girls, some prepubescent, showing their genital areas. But what if he didn't pay for it, but he took the free tour section, which they seem to offer, it doesn't cost anything, it's the lonely planet for the sexual predator, and he does it 20 times? Is that possession if all he does is look 20 times and he doesn't subscribe? It can give rise to possession. And how the government finds out about it is a completely different question. I'm really worried about that. I mean, everybody knows that when they have a JPG, a JPEG, or a movie, or one of these things on their computer, it's a separate file, and it has a title, and then it says JPG, or MVI, or one of these other suffixes that indicates what it is, that they've got an image. But what you're talking about is the computer's history of every place he's gone and the cache that has whatever data the computer had until a person's computer gets slow and he deletes his cache, that are essentially unretrievable. If you try to retrieve, your computer will say you're not online, can't be retrieved. And what you're doing is converting everything that a person has ever looked at on the net to possession, if I understand your argument right. All I'm saying is that it's an open question. And you asked earlier of my colleague here of a citation. I do have a citation for you. Open question. Okay. Give me the citation. So we have to argue this? I mean, I can make all the questions. We could talk about the First Amendment in connection with some of this as well. But do you need that in order to win this case? Well, in all fairness to Justice Kleinfeld's question, I can give you a citation. United States v. Martin, 418 F. 3rd, 148, Second Circuit. It was decided August 4th of this year. And in the body of that decision Are you given that citation to the Court before? I haven't. I wasn't going to offer it up, but Justice Kleinfeld had asked the question of my colleague today, and I just had this case faxed to me this morning. I just discovered it this morning. Are you changing your position from the affidavit? The affidavit was based on the fact that he was a collector. That's correct. And there was no download. That's correct. Now, what's your position today? My position is that the subscription, the subscription to the voluntary membership for a fee to a dedicated child pornography website, and that is to remain a member for at least two months, the primary feature of which was the distribution or the availability of child pornography. That is my theory. And that that made him a collector, and that's because you didn't have any possession. So then you fit the collector profile, which is established by the experts, right? That is correct. So then you're taking the position that page 1 and page 2, when he signed up, is a description of a child pornography website. That is correct. Tell me what's in those pages that make it a pornographic offer. Well, we've got the advertisement itself. That's what I'm talking about. That's all in the record. Before he signs up, there's only two pages, plus some images that are described as what he saw when he signed up. There's nothing else in the record that said he went any further, that he cruised or did anything else. So tell me, in those two pages, what's represented there? What is child pornography, or how do we interpret those? Is that child – is it child erotica, or is it child pornography? Well, from the statement provided in the affidavit, we have prepubescent girls that are shown on page 1, the opening web page. We've got the second page that we know that he visited, and there we've got the testimonials from the members, but there we have a caption, Lolita's, age 12 to 17. The naked genital area of minors are depicted in three images on that page. Now, is naked genital areas per se child pornography, or is that child erotica? It depends, if they're lascivious. Exactly, and later on in the affidavit, the agent said lascivious photographs described as naked breasts and genitalia, but he didn't do it on the first two pages in describing what were on the first two pages. That's correct. So who makes that determination? Does the – what standard do we put when the magistrate looks at that? There are cases that say the magistrate has to have specific references to go by. He can't imagine. So what's a specific reference to tell him what this naked genitalia was? Well, I understand your question, and I think we can look at the entire affidavit to give it context as to whether this website consisted of child pornography. How can you? The man subscribed on only seeing page 1 and 2, so you're taking what he has on his computer, i.e., child pornography, and pushing it forward to make him a collector when he never got it. When he made – when he accepted the offer and paid 90 or whatever it was, $19.95, all he saw from the affidavit, from the affidavit was the first two pages. But he also would have seen the comments from members. Absolutely. What's pornographic about – what's child pornography about having interest in young children and also nudity of young children? That's constitutionally protected under the Fifth Amendment. Are we going to have to wander there? Well, the question is, certainly what he might have seen – We may like that, but do we have to wander there? I think under the totality of the circumstances, we can look at the affidavit as a whole. I understand what your question is. How can we look at the affidavit as a whole? They caught him with it. And he said they'd download it. So if that's why we worry about probable cause at all. But he could have unsubscribed from this website if he had such a distaste for it. He could have unsubscribed, and he never did. How do we know what he did, other than the fact that you've called him a collector by a description of a collector, of someone who has these interests, and yet in the affidavit, it doesn't show any history of why he should be classified as a collector. And in our Weber case, we set up some pretty high standards relative to what you have to do to have somebody fit an expert's profile. Without your expert's profile, you can't get there, can you? Well, I don't necessarily think- Can you get to a collector analysis under your theory without your expert's profile? Well, if I understand your question, a person who seeks out a website by the name of Lolita Girls, I mean, the name in and of itself has a connotation associated with it. Where's that said in the affidavit? I've come from Mars. I don't know what Lolita means. I think- You're not suggesting the book is pornographic, are you? Lolita? Excuse me? Say this again? You're not arguing that Nabokov's book is a constitute child pornography? Do you know Nabokov's book? I have not read the book. Have you heard of it? I have heard of it. Could you possess a copy of Vladimir Nabokov's Lolita with a picture of a 12-year-old on the cover? Yes, because it doesn't have the lascivious display. Now, let me ask you, if I know that you don't agree with this, you think looking is enough because it creates traces in your computer, it puts data in your cache. Let's suppose that the law was looking is not enough. A person must download an image so that he knowingly possesses an image. Let's suppose that's the case. Why wouldn't it then be too much to infer from this search warrant affidavit that he downloaded any images, since the government did not put in any evidence that the history of downloads from the site did not show any downloads to this individual? This person sought out a website with the name Lolita Girls, with the advertisements that they stated verbatim. Do you remember Lerner and Hand's statement that no one has a duty to pay any more taxes than he owes under the law? Vaguely familiar with it. As I recall, under the criminal law, no one has a duty to conform to the spirit and the numbers and the emanations of the criminal law, just the letter of it. So I'm thinking if this person really had a thing for little girls, but he didn't want to get busted for a felony, he could look as long as he didn't download. And it might be that a lot of law-abiding individuals do just that, because they want to be law-abiding individuals. If, indeed, the law does permit looking as long as you don't possess an image, as long as you don't download, it seems like the affidavit would not be enough to show that this fellow went any beyond that law-abiding status. This affidavit shows there was a fair inference to believe this person downloaded images from the bus. Well, they had the server for a long enough time to look at the history of downloads on the server, and they didn't say that he downloaded any. This is one of the problems with the case is that we are using the term computer and server interchangeably. I know what the words mean. But not we here in this Court, but at the district court level. The reality is the FBI did not have the server. The affidavit says computer. There's not the word server anywhere in that affidavit. There's not a server. The FBI did not have the server. And during the questioning of the agent at the district court, that term server and computer was used interchangeably, which was creating a false impression of we didn't have the server. What the way that websites can work, a website operator, on a small site uploads their information. Desktop computer can be the server. You just program it to act as the server if there isn't too much volume. That's correct. Or you can take your information and upload it to a server in another State, for that matter. You can. And then that server provides the download services. It can be either way. I mean, I routinely program the computer in our kitchen to be the server for the other computers in the house as just whatever you want to make the server. So unlike the case in the Hay case where we had Dr. Evans, a one-on-one child pornography trader, from the facts of the reported opinion, it appears that he was distributing pornography from his computer directly to a customer. The FBI didn't have the server in this case. They did have Mr. Gord's or, excuse me, Mr. Field's computer, and the agent did try to clarify that the computer of Mr. Field's was seized at the time of the warrant. I don't know whether the server was located at his residence or whether it was at another site, and whether he just used his personal computer to gain access. So I want to make that clarification at the outset. The FBI did not have the server in this case.  The next thing I want to talk about is the affidavit of child pornography. The affidavit, all I could find so far in the affidavit, it says that the images posted on the site included adult pornography, child pornography, and child erotica. And it says that during the period of time, the undercover agent captured hundreds of images that have been uploaded to the website. Of them, some depicted lascivious displays, et cetera, of children under the age of 18. But I haven't found anything. Is there something in the affidavit that says that these were primarily child pornography or they were largely child pornography? Is there something that supports your statement? Well, there's nothing in the affidavit that uses an adjective such as that. Anything other than just saying there were three categories, one of which is illegal? What the affidavit says is what it says. But this was a dedicated child pornography site. What does that mean, dedicated? I don't know. What is it? Well, let's get the name, Lolita Girls. That again, the term Lolita. Or is that stated in the affidavit, Lolita Girls is a pornographic, references pornographic literature, or do we just off the top, each one of us imagine what Lolita Girls means, unless you've read Nabokov's book? Well, I think a judge is entitled to draw upon some reasonable inferences. Just like the term playmate or playboy bunny might have a certain context for certain Well, maybe it's child erotica. Maybe Lolita reminds me of child erotica. Then what? Then, well, it's not pornographic and that's not illegal to possess. That's one factor. All I'm saying, we've got the title, Lolita Girls. We've got the opening web page. We've got the statements about you can't go wrong if you like young girls. We have nude images on the first page. At the second page, we have the website operator himself saying 1,000 pictures of 12 to 17-year-old naked Lolita Girls with weekly updates. We have images on that page. With the caption. I mean, I don't, what does that mean? Out of how many? Were there substantial pictures that were legal that he might have been downloading? The website operator himself, when he was arrested, said I operate, this is a child pornography website, which I operate as a source of income. But on the same site, that's what I'm trying to understand. On the same site, there are three categories. One is illegal. Two are legal. Is there any way we have any information about what percentage is illegal, what percentage is legal? Not from the face of the affidavit. But the affidavit does lend an inference that it was a child pornography website based on all of these things that I've mentioned. Child pornography and child erotica and adult pornography. It was a website with all three of those. When the FBI did a forensic examination of Mr. Field's computer, as stated in the affidavit, they located child pornography on his computer. We have the undercover agent capturing hundreds of images of child pornography during the time the undercover agent was a member. No, it doesn't say that. It says he captured hundreds of images that have been uploaded to the website. They included, and then there's all three categories. And then the appliant went on to say the agent captured images that depicted the lascivious display. And it says of those hundreds, some depicted lascivious displays, et cetera. Do you have to prove beyond a reasonable doubt that he – that there were – that he possessed images of pornographic images? Not at the search warrant stage. Right. What do you have to show? We have to show whether there's a reasonable probability to believe that contraband or evidence of a crime would be located on his computer. And the crime? We don't need to show an absolute certainty. And that evidence of the crime would have to be, I think in this case, would you agree, lascivious, sexually contented pictures of minors? Yes. And do you think that the – that there could be an inference drawn that the lolita.com website was designed solely to appeal to the period interest of the user? I believe that it was. Could that be a legitimate interest? I mean, a legitimate inference? If a person was – If you're arguing that that ad, I call it the offer, was an offer to subscribe to an adult or to a child pornography website, if it's not a child pornography website, is it designed to appeal to the period interest of the user? If it is not a child pornography website. If it's a child erotica website, is that designed to appeal to the period interest of the user? One could say that it would. Do you think that a subscription to a purely labeled and uncontestably child erotica website would be enough to provide probable cause? I think there would have to be some child pornographic images to give rise to that. And I think the affidavit gets us there. Well, that wasn't my question. I just said if we – if it's uncontested that this is simply a child exotica website, I mean, at least from what we know, is subscription enough to give probable cause? I think probably the answer is no. If it's child erotica. But if it's a mixed use, you say yes. I say there would be probable cause. Because there might be some legal material, should not negate probable cause. That flies in the face of Illinois v. Gates. If it's sexual pictures of 19-year-old girls and they're advertised as appealing to the fantasies of people who would like to look at sexual pictures of 17-year-old girls, is that enough to make possession of the images criminal? It probably would not be criminal because they're not minors. But here we know we've got child pornography. How do you tell a 17-year-old from a 19-year-old? Well, we've got our website operator telling us this is a child pornography website. We have an express course. Unfortunately, he didn't tell anybody in his offer that it was. If he had said that right across, in fact, he disclaimed that by saying it complied with the law. So how do we take those two statements, the website that you accept the offer to or what he says after he's arrested? Well, I think you can look at the express words, 12 to 17-year-olds. This is a site for people who like young girls. You can't go wrong here. Wait, it says two things. This is a site for people that like to look at 12 to 17-year-old girls and this is a site that complies with this statute. I'm thinking that the viewer, the bad man who nevertheless wants to stay out of jail might think this is a site that's going to dress 19-year-olds up in bobby socks and give them high school book bags so that you get the best of both worlds. It's legal, but it appeals to his interests. Why wouldn't that be a fair inference? If a person was interested in adult pornography, why on earth would they take the risk to go to a site with the title Lolita Girls, pay a fee, with the advertisements of 12 to 17-year-olds, why would they go to that extent? It's a fair inference to say they're going to that site because they want the kiddie porn. That's why they're going there. There's a reason to go to a site like that. Roberts, I didn't know people do a lot of browsing. I bet a lot of people who are concerned about animal welfare and those poor animals in New Orleans have accidentally stumbled across sites that had some affiliation with the Animal Liberation Front, a terrorist group, and that some people who are just interested in that group have stumbled across Environmental Liberation Front sites, terrorist sites. If all it takes is going and looking at just at a general interest, you've got a lot of felons out there, a lot of people that can have their computers searched. Well, again, that fact pattern presupposes a couple of things. You're presupposing the government would find out about it. And the mere act of clicking on a website, you wouldn't know about. You wouldn't find out about it whenever there's a domestic dispute. But that's why you've got the membership here is so important. So is your argument, for example, that if you have a membership to a television cable subscription that has a variety of contacts, some of which might be illegal, that that's enough to be a probable cause to search other things in your house? If that to search your digital video recorder. And if that website held itself out as an illegal website, I mean. Well, this one didn't, though. This one said it's legal. I think it's fair to say, though, based on the affidavit, you've got 12 to 17-year-olds. The viewer who came to this website knew exactly what he was getting himself into. He had several opportunities to back out. A viewer could have taken a free tour of the site and said, yuck, I don't want to be involved in this, and could have backed out. But we know the defendant here went further. He took this a step further. He actually purchased a membership which gave him unlimited access to 1,000 pictures of naked Lolitas 12 to 17 years old, which we knew contained child pornography based on what the FBI news was. Is that what the record shows? Excuse me, Your Honor? He renewed it for a month. What does the record show? It's an automatic renewal, Your Honor. So once you join the membership, it renews every month unless you take steps to unsubscribe. I've got a concern that I'd like you to help clear up. Maybe I didn't ask the question right the first time. I take it that you have to rely on the expert declarations in the affidavit to help your case to establish that he was a collector in order to establish a probable cause. Okay. That runs us right into our Weber case. Our Weber case set up a standard that says that if you have an expert that sets up some sort of scenario and that your target doesn't fit that scenario, then you can't use the expert's conclusion. Isn't that what happened here? Because if you take a look at Weber, unless we do away with Weber, Weber says that you have, Weber had downloads. Weber, not downloads, Weber had the pictures. It's the only case in our circuit that I know of, unless I've missed one, that does not have actual possession of the so-called lascivious image, and therefore your definition of the collector is necessary in order to get the search on for probable cause. And so if we can't use your expert testimony, if we use the Weber standards, what do we do then? All right. On, first of all, let's talk about collector profile in this case. Even from the advertisements of the member testimonials, they, this is a collector site. You look at the very words provided by the enthusiastic members, a complete collection of young girl pictures. Eddie, these Lolita pictures are first in my collection. So we've got the members themselves on the second page talking about their enthusiasm for this collection. So it is a fair inference to say people who go to these sites are collectors. With respect to the Weber case, we've got some different facts going on. In the Weber case, the defendant there received from government action an advertisement. Apparently in this advertisement, the written opinion doesn't make it clear, but there were no images provided. Apparently it was a list of photos that were available. Descriptions. Descriptions with the name Piccolo and Chicken. Here we've got more than that. We have the very words from the website itself. We have the images that are on display on page 1 and page 2. Counsel, your time has expired. Thank you. Sorry. Just to hit a couple of things very quickly that I think need to be clarified. In Weber, it was unequivocal that what the target there had ordered was child pornography, that there was no question about that. And if mere ordering child pornography that is unequivocally illegal in Weber is not sufficient, how can a subscription to a website that is not fully illegitimate or clearly illegal going to be sufficient? And it's not just my interpretation of what the advertising was about. If you look at the record from 69 to 70, Excerpt of Record 103, the FBI agents themselves recognize that there is all sorts of fetish material and other type of material with this LIDA imprimatur that is perfectly legal and does not necessarily constitute contraband. So if we're looking at common sense, one of the best places to start is to testimony the agents themselves who were involved in this investigation. What about the owner who said it was a site dedicated to child pornography? And it was belied by everything else that was in the affidavit. That was not the affidavit itself in paragraph 2 says it's a mixed content site. Hundreds of images were captured by the undercover, and only some of them were lascivious. That kind of inconsistency when there's no pictures from the site itself, even though they've supposedly been captured that are presented to the magistrate, nothing about, by any means, no out-of-downloading or anything of that nature in terms of actual possession, it's simply too much of a stretch to say that that subscription, that solicitation, that blurb, you don't always get what you pay for. And the appearance of youth is not always what it seems to be. There are a lot of people who want to walk up to the line and stay within the constitutional protections. More, Gucci recognized that himself. He testified at 69 to 70 of the record that a visitor to this site, before actually even getting into the continent, could rely on the compliance and what was advertised there and believe it was a legal, albeit distasteful, website. The auto-downloading issue, Your Honor, in terms of the iOS server, I refer you to 66 and 67 of the record. It is somewhat inaccurate to suggest that they could not trace this. The more Gucci testifies that either they had the iOS server records themselves or they knew from Fields' computer where to get the transmission records. It's discussed fully at 66 and 67. If they had presented this auto-downloading theory, and it may, and I'm sure it will come up, it would have been challenged by the defense in a very different way. We get into staleness issues. We get into whether or not there is a knowing possession, which is required by Hay. Some evidence of probable cause to believe that it was a knowing and not unintentional possession. Let the government raise those issues. It will raise a host of interesting new challenges for the Court to address on a proper record. But what they're doing by slipping that in at the hearing is almost implicitly acknowledging that, yes, some evidence of possession was required because the affidavit is so otherwise deficient. Thank you, Your Honor. The case just argued is to be a decision that is not valid in this session.
judges: Schroeder, Reinhardt, Brunetti, O'scannlain, Rymer, Kleinfeld, Thomas, McKeown, Gould, Callahan, Bea